ELIAS MALLOUK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LULU MALLOUK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH MALLOUK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHERINE MALLOUK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 74613–74616. Promulgated April 7, 1936.

*Ross M. Bacon, Esq.*, for the petitioners.
*Paul A. Sebastian, Esq.*, for the respondent.

ARNOLD: In these proceedings, duly consolidated for hearing, respondent determined deficiences in income tax for the year 1930 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Elias Mallouk | 74613 | $505. 27 |
| Lulu Mallouk | 74614 | 140. 73 |
| Joseph Mallouk | 74615 | 88. 41 |
| Katherine Mallouk | 74616 | 323. 36 |

Petitioners duly appealed to the Board for redetermination of the deficiencies, and assigned as error the action of the respondent in refusing to allow as credits against the tax, in lieu of allowing as deductions from gross income, certain taxes paid by petitioners to the Government of the Philippine Islands during the taxable year.

The parties stipulated the facts substantially as follows:

The petitioners are citizens of the United States and were members of a domestic partnership, Elias Mallouk & Brother, New York City, each having an interest in the partnership of twenty-five per cent, in 1930.

The partnership of Elias Mallouk & Brother during all years material to the issue here involved, was engaged in the sale of lingeries and embroideries which it manufactured in its own plant in the Philippine Islands and shipped to its selling organization in the United States.

The partnership kept its books of account and records on the accrual basis.

On goods manufactured in the Philippine Islands and shipped abroad, the Philippine Government levied a tax based on the sale price of the goods for sale, or if not sold in the Philippines as in the instant appeal, a tax based on the value of the goods consigned.

A statement from the Department of Finance, Philippine Islands, relative to the payment of the 1930 tax reads as follows:

"This is to certify that Elias Mallouk and Brother, holders of privilege tax-receipt No. C–1–755, 1930 have paid the taxes corresponding thereto as detailed herein below:

| Quarter | Amount Paid | Date of Payment |
|---|---|---|
| First _____Pesos | 3, 122. 17 | April 16, 1930 |
| Second_____ | 2, 103. 59 | July 18, 1930 |
| Third_____ | 1, 894. 73 | October 20, 1930 |
| Fourth_____ | 1, 793. 48 | January 6, 1931." |

The aforesaid payments are equivalent to $4,456.98.

The amount of the taxes here involved applicable to each of the petitioners is as follows:

| | |
|---|---|
| Elias Mallouk | $1, 114. 25 |
| Katherine Mallouk | 1, 114. 24 |
| Joseph Mallouk | 1, 114. 25 |
| Lulu Mallouk | 1, 114. 24 |

A merchant who manufactures his product in the Philippine Islands has to obtain a privilege tax-receipt for which a certain payment is required prior to commencing the manufacture of his product. After obtaining the privilege

tax-receipt the recipient thereof can begin business and the tax payments thereon are based on gross sales or in case of exported consignments on the value of the goods shipped as in the instant case.

The total amount of $4,468.98 paid by the partnership to the Philippine Islands was based on the value of goods shipped to the partnership during the year 1930.

On the determination of the deficiencies appealed from, the amounts here in controversy were allowed as deductions from income of the petitioners.

In the event that the Board holds that any of the amounts here in controversy are allowable as credits against the income tax paid by these petitioners to the United States, it is stipulated that the amounts determined to be allowable as a credit will be added to the net income of the petitioners.

The net income from the Philippine Islands and from all sources is as follows:

|  | Elias Mallouk | Lulu Mallouk | Joseph Mallouk | Katherine Mallouk |
|---|---|---|---|---|
| Philippine Islands | $4,253.97 | $4,253.97 | $4,253.97 | $4,253.96 |
| All sources | 63,130.75 | 16,696.26 | 16,045.03 | 25,484.00 |

The law imposing the taxes here in controversy was first enacted by the Philippine Legislature in 1914 as a part of Act 2339. Pertinent provisions of this Act are as follows:

"Article 1. Section 21.—Sources of taxes—The following taxes, fees and charges in the nature of tax are deemed to be internal revenue taxes:

"(a) The cedula tax;
(b) The documentary tax;
(c) The privilege taxes on business and occupation;
(d) Specific taxes on manufactured products;
(e) Taxes on resources of banks, receipts of insurance companies, and receipts of corporations paying a franchise tax;
(f) Charges for forest products;
(g) Fees for testing and sealing weights and measures;
(h) Internal revenue, including the income tax collected in the Philippine Islands under laws enacted by the Congress of the United States;
(i) Taxes on signs, signboards and billboards."

### Article IV

#### Privilege Taxes

"Section 34. Privilege taxes on business and occupation.—A privilege tax must be paid before any business or occupation herein specified can be lawfully begun or pursued. * * *. On some sorts of business the tax is in a fixed amount while on other sorts of business it is reckoned at a certain rate per cent on the amount of business transacted.

"Section 39. Payment of percentage taxes, quarterly reports of earnings.— The percentage taxes on business shall be payable at the end of each calendar quarter in the amount lawfully due on the business transacted during each quarter. * * *.

"Section 40. Percentage tax on merchants sales.—All merchants not herein specifically exempted shall pay a tax of one-third of one per cent on the gross value in money of the commodities, goods, wares, and merchandise sold, bartered or exchanged by them, such tax to be based on the actual selling price

or value at which the things in question are disposed of, whether consisting of raw material or of manufactured or partially manufactured products, and whether of domestic or foreign origin.

"Section 41. Sales not subject to merchants tax.—In computing the tax above imposed transactions in the following commodities shall be excluded.

"(a) Merchandise actually exported by the vendor:

"(Public Laws of the Philippine Islands, (Vol. 9.))"

"Section 40 of Article IV Act No. 2339 was amended by Act No. 2541 enacted December 18, 1915 by increasing the rate of tax to one per cent and eliminating the exemption of the tax on goods consigned abroad. Section 41 (a) was eliminated. (Vol. 11 Public Laws of the Philippine Islands.)

"At a special session of the Philippine Legislature in 1923 the following Act was passed:

"No. 3065—An Act to establish a percentage tax on the business of the merchants, manufacturers and commission merchants and for other purposes.

"Section 1. All merchants, manufacturers and commission merchants not otherwise specifically exempted according to the provisions of the present Internal Revenue Law shall in addition to similar taxes heretofore imposed pay an additional tax of one-half of one per centum on the gross value in money of the commodities, goods, wares and merchandise sold, bartered, exchanged or consigned abroad by them, such tax to be taxed on the actual selling price or value of the things in question at the time they are disposed of or consigned, whether consisting of raw material or of manufactured or partially manufactured products, and whether of domestic or foreign origin. The tax upon things consigned abroad shall be refunded upon satisfactory proof of the return thereof to the Philippine Islands unsold.

"The life of Act No. 3065 which expired December 31, 1924, was extended to December 31, 1925, by Act No. 3183 approved November 27, 1924, and on November 25, 1925, effective as of January 1, 1926. Act No. 3065 was reenacted as Act No. 3243, Section 1 of which reads as above quoted. The latter act was in effect for the entire year 1930."

The Philippine Islands have had an income tax law since 1919 which has since been amended by Acts 2633 and 2936, the latter enacted in 1922 and in effect through the year here involved.

Section 8 (a) of Act 2926 reads as follows:

"The tax shall be computed upon the net income, as ascertained in accordance with the foregoing provisions, of each person subject thereto received in each preceding calendar year ended December 31."

The Revenue Act of 1928, section 23 (c), provides, in so far as material here, that in computing net income there shall be allowed as deductions, among other things, taxes paid or accrued within the taxable year except (1) income, war profits and excess profits taxes imposed by the authority of the United States, and (2) so much of the income, war profits and excess profits taxes imposed by the authority of any foreign country or possession of the United States as is allowed as a credit against the tax under section 131. And section 131 provides that in the case of a citizen, the income tax imposed by the act shall be credited with the amount of any income, war profits and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States.

In computing the deficiencies involved in this case respondent allowed as deductions from gross income under section 23 (c), *supra*, the Philippine taxes above mentioned, on the theory that such taxes were not income, war profits or excess profits taxes. Petitioners contend that the taxes paid to the Philippine Government should be allowed as a credit against their respective Federal income taxes instead of deducted from gross income. Thus, the issue is resolved into a single question whether the Philippine taxes may properly be classified as income or profits taxes. To resolve this question we must determine the nature of the controverted taxes as indicated by the Philippine statutes.

At the outset we find that the law imposing these taxes, first enacted in 1914 as Act No. 2339, states that they are "deemed to be internal revenue taxes", and later therein they are more specifically described as "privilege taxes."

Act No. 2339 was amended by Act No. 2541 in 1915 by increasing the rate of tax and in other particulars. In 1923 Act No. 3065 was passed "establishing a percentage tax on the business of merchants", etc. This act expired at the end of 1924, and was renewed and later reenacted as Act No. 3243 in effect during 1930. The nature of the tax imposed by these various acts appears to be substantially the same as in the original enactment, namely, a privilege or excise tax. It was not a tax imposed upon income or profits, either gross or net, notwithstanding the amount of the tax was determined or measured by a percentage of the gross value in money of the goods, wares, and merchandise exchanged or consigned abroad. The amount of the tax was computed on the basis of the "actual selling price or value." Where goods were exported, as in the instant case, the tax was computed on the value of the goods shipped. Whether the goods were ultimately sold at a profit or loss, therefore, did not affect the amount of the tax. Such a tax is in no sense an income or profits tax.

On the evidence before us we can reach no other conclusion than that the tax in question was in fact what it was designated in the taxing acts, namely, a privilege tax. Not being an income or profits tax, it is not allowable as a credit against the Federal income tax due from petitioners. They are only entitled to deduct the Philippine tax from their gross income. Such deductions respondent has already allowed. His action is approved. *Eitingon-Schild Co.*, 21 B. T. A. 1163; cf. *Havana Electric Railway, Light & Power Co.*, 29 B. T. A. 1151.

*Judgment will be entered for the respondent.*